Dear Mr. Babin:
You have requested an opinion of the Attorney General, in your capacity as legal advisor to the Ascension Parish Government (Parish), regarding the legality of the payment for accrued vacation leave to the previous Parish President (President). In connection with your request, we have been provided with documentation, including excerpts from the Ascension Parish Charter (Charter), the Personnel Polices (Policies) in effect during the President's terms of office, minutes of the Council's meeting on December 2, 1999 and summaries reflecting the "Accumulated Leave History" of the President.
Initially, we note that our opinion is based upon the above referenced information. Some information was submitted subsequent to your request. If there is additional information which has not been brought to our attention, our opinion may be subject to modification based on the review of such information. Further, this opinion is limited in scope to the issue of payment of accrued leave to the specific individual in question since several key determinations are fact specific.
Ascension Parish Voters adopted and approved the Charter in May of 1993. The President was subsequently elected for an initial term of two years. He was reelected to a four year term, after which he left office on January 3, 2000.
Section 3-06 of the Charter provides that the President is a "full-time official", and Section 3-03 designates him as the "chief executive officer" of the parish. His rate of compensation is set forth in Section 3-02 which provides, in pertinent part, the following:
 A. The president shall receive a minimum salary of $55,000. (Emphasis added.)
The duties of the Secretary-Treasurer of the Parish are provided for in Section 5-01(B), and include the following:
 B. The treasurer shall:
 * * *
 2. maintain the treasury of the parish subject to the approval of the governing authority;
 * * *
 5. prepare and issue all checks for the parish, permitting no expenditure except those duly authorized in accordance with this charter, parish ordinance and/or applicable state laws.
Section 5-04 establishes the Human Resources Department consisting of a personnel director and a review board. It provides, in pertinent part, the following:
 A The personnel director shall be responsible for the administration of the personnel system for the parish, including all parish departments, offices, agencies and special districts in accordance with personnel rules adopted pursuant to this section.
 * * *
 D The duties of the personnel director shall include but shall not be restricted to the following:
 3. To prepare personnel rules to carry out the provisions of this section. Such rules apply to all parish departments, offices, agencies and special districts and provide for:
 * * *
 f. Hours of work, attendance regulations, sick and vacation leaves. (Emphasis added.)
Section 701:1 of the Personnel Policy in effect on the date the President took office, provides, in pertinent part, for the accrual of annual leave as follows:
 Each full-time employee shall be entitled to annual leave with pay in accordance with the following schedule:
 * * *
 Earned annual leave not taken by an employee may be accumulated and carried forward into the next calendar year.
 * * *
 Upon separation from service, payment of the accrued annual leave up to the date of separation shall be paid. The rate of pay shall be computed on the basis of the rate the employee is receiving at the time of separation.
The President accrued leave pursuant to this Policy from the date he took office. Leave records were maintained by the Secretary-Treasurer, and the amount of accumulated leave and any leave taken appeared on each paycheck stub issued to the President.
On July 16, 1996, a new Personnel Policy was adopted by the Parish. The following excerpts govern the compensation for accrued vacation leave under the new Policy:
 § 3. Annual Vacation Leave
 Regular employees accrue, and are eligible to use, paid vacation based on the service length established below. No vacation leave shall be earned until the employee has been employed for ninety (90) days. After ninety (90) days, the employee shall be eligible for leave and shall be credited for vacation leave retroactive to the date of employment.
 * * *
 3.1 Maximum Accrual. An employee may accumulate vacation time up to the maximum that is equivalent to the number of vacation days which can be earned by that employee during his or her most recent five (5) years of employment, not to exceed one hundred twenty (120) days.
 3.2 Payment for Accrued Annual Vacation Leave. Upon separation from service, payment for the accrued annual leave up to the date of separation shall be paid. The rate of pay shall be computed on the basis of the rate the employee is receiving at the time of separation.
The Manual defines the term "Regular Employee" as follows:
 An employee who has successfully completed the prescribed probationary employment period. (1) A regular full-time employee provides full-time services and is compensated at full pay and benefits for the assigned position; (2) A regular part-time employee provides less than full-time service and is compensated in proportion to the amount of service provided.
The President continued to accrue leave pursuant to the new Policy from the date it became effective. Again, leave records were maintained by the Secretary-Treasurer and the amount of accumulated leave and any leave taken appeared on each paycheck stub issued to the President. On those occasions when the President took vacation days, he submitted the appropriate "Leave Vacation Request Form" and the hours reflected thereon were debited against his accrued leave. Records furnished to this office reflect that the President took vacation leave in calendar years 1998 and 1999.
It should also be noted that, in addition to salary and accrued leave, the President received the same benefits accorded other employees, including life insurance, retirement and holidays.
A memorandum to the Human Resources Director from the Secretary-Treasurer, dated March 3, 1999, reflects a detailed explanation of the changes in the way vacation time was accrued under the old and new Personnel Policies. There is nothing in the memorandum to suggest that the leave already accrued, and/or to be accrued, by the President is improper.
We have also been provided with a transcript of the "Minutes of the Regular Parish Council Meeting", held on December 2, 1999, or approximately one month from the date the President was to leave office. The Minutes reflect a discussion between legal counsel and Council members regarding the President's entitlement to payment for accrued leave. We believe the following excerpt to be relevant to the issue at hand:
 Basically there is some statutory authority 42:421 which has to do with State Annual Leave Policy that says, "elected officials are to be treated like employees for annual leave purposes". Now that's a statute that deals with something other than local governments but the Attorney General has rendered some opinions and they've kind of piggy-backed on to that particular statute and said "well, if they are going to be treated like employees, for that, under a state level we see no reason to differeniate on a local level". Another thing that I've mentioned before is that I believe your [customary] policy that you've been ongoing for years is going to take custom can establish law so to speak after a use I believe that the Parish President has been treated for the benefits as a parish employee goes through the same processes and procedures as a parish employee. Of course a lot of the Personnel Policy Manual doesn't apply to the Parish President there are a lot of differences — but we feel he's basically an employee under this. If he wasn't, then you can say well, it's a possibility you could pay his accrued sick leave different from an employee but we felt he was being treated like an employee, therefore he is an employee from you guys standpoint so he's gotta be treated like all other employees.
Subsequent to the above Council Meeting, and in the normal course of business, the Secretary-Treasurer issued two checks representing payment for the vacation leave accrued by the President through January 3, 2000, all in accordance with the formal leave Policies.
This office has previously addressed the issue of the ability of a local elected official to accrue and be paid for annual and sick leave. Attorney General Opinion No. 89-222 addressed the issue of whether the Mayor of the City of Minden, an elected official, was nevertheless considered an employee entitled to accumulate and be paid for unused leave upon termination or retirement. Therein, we concluded:
 The official vacation policy does not exclude elected officials, and no statute regulating municipalities is noted containing such an exclusion. Because the legislature has not preempted by statute the right of municipalities governing their own annual leave benefits, the vacation allowance policy adopted by the governing authority of the City of Minden is binding upon the municipality.
 Although not binding upon the City, the State Annual Leave Policy (LSA R.S. 42:421B) considers elected officials to be "employees" entitled to annual leave.
 In our opinion the Mayor of the City of Minden is an employee of the City, who by the express terms of the official City vacation policy is entitled to that amount of annual leave therein prescribed for his years of service. Like all other employees under the Policy, the Mayor may accumulate annual leave and such unused leave may be "applied upon termination or retirement".
While the above opinion addresses the payment of accrued vacation leave to the chief executive officer (i.e., mayor) of a municipality, it is nevertheless germane to the case at hand. Under the Parish Charter, the President occupied the position of a "full-time official". From May, 1993 through January 3, 2000, the President accrued vacation leave pursuant to the formal Personnel Policies in effect. Records were maintained reflecting the hours of leave accrued and taken.
There has been no suggestion whatsoever that the President abused his authority or requested preferrential treatment for purposes of leave accrual and/or other benefits. Further, he was never advised by members of the Council, staff and/or legal counsel that he was ever ineligible for the payment of accrued vacation leave. To the contrary, we believe that a reasonable inference can be drawn from the discussion at the December 2nd Council meeting that the President should be treated like any other Parish employee for purposes of the payment of accrued leave. Obviously, the Treasurer came to this conclusion as evidenced by the issuance of the two checks to the President.
Accordingly, having considered the facts and the documentation in support thereof, and the manner in which the leave policy was administered as to this President only, it is the opinion of this office that the payment for accrued vacation leave does not constitute a violation of the laws or Constitution of this State.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEUYOUB Attorney General
 By: ____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj